UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL COMMEAU, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil No. 08-306-B-W |
| | ) |
| JEFFREY MERRILL, WARDEN, | ) |
| MAINE STATE PRISON | ) |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

A Maine jury determined that Michel Commeau kidnapped and sexually assaulted a woman whom he had stalked in preparation for his attack. State v. Commeau, 2004 ME 78, ¶ 2, 852 A.2d 70, 71 -73. He is serving ten years on the kidnapping conviction and a consecutive sentence of forty years on the gross sexual assault conviction.[1] Commeau presses six 28 U.S.C. § 2254 grounds. A recurring theme in his 28 U.S.C. § 2254 pleadings is that there has been a cover-up/fraud/miscarriage-of-justice/set-up by the State of Maine's 'corporation' court system. (See, e.g., Sec. 2254 Pet. at 2-3, 6; Resp. Mot. Dismiss at 1-2.)[2] Commeau does not present any issues focusing on DNA testing, his sentencing, or the performance of appellate counsel in this § 2254 petition, although those were concerns he did raise in the state courts. The State has filed a motion to dismiss, to which Commeau has replied. I now recommend that the Court deny Commeau 28 U.S.C. § 2254 relief.

*Discussion*

---

[1] "Commeau has a thirty-year criminal history, including violent crimes and sex crimes, in Kansas, Massachusetts, and Maine. He was previously sentenced to twenty years at the Maine State Prison after a conviction for rape and gross sexual misconduct. See generally State v. Commeau, 438 A.2d 454 (Me.1981). With that twenty-year sentence, Commeau served a concurrent five-year sentence for another gross sexual misconduct charge." Id. ¶ 11, 852 A.2d at 73 -74.

[2] The 28 U.S.C. § 2254 petition is rambling. For instance, Commeau discusses shackling at trial (Sec. 2254 Pet. at 4) but this in not an aspect of any of his § 2254 claims.

*Applicable 28 U.S.C. § 2254 Standards*

This Court can review a 28 U.S.C. § 2254 claim only if Commeau "has exhausted the remedies available in the courts of the State"; or unless "there is an absence of available State corrective process; or … circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(A),(B).  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Id § 2254(b)(2).  "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."  Id. § 2254(b)(3).

With regards to the substance of Commeau's § 2254 challenges, relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim":

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).  See also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006); Smiley v. Maloney, 422 F.3d 17 (1st Cir. 2005); Mello v. DiPaulo, 295 F.3d 137, 142-43 (1st Cir. 2002); Vieux v. Pepe, 184 F.3d 59, 63-64 (1st Cir. 1999).

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) and O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)); see also id. at 32 ("A litigant wishing to raise

2

a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' "); Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) ("It is, however, clearly inadequate to simply recite the facts underlying a state claim, where those facts might support either a federal or state claim.")(citing Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).

"[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  If Commeau failed to develop the factual basis of a claim in State court proceedings, he is not entitled to an evidentiary hearing in this Court unless his claim relies on: "**(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence." Id. § 2254(e)(2)(A).  Commeau must also demonstrate that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [Commeau] guilty of the underlying offense." § 2254(e)(2)(B).

### Commeau's 28 U.S.C. § 2254 Grounds

#### *Grounds One, Four and Five - Trial Court's response to a jury question, prosecutorial lies and fabrication of evidence, and the arresting officer's conduct*

In his first 28 U.S.C. § 2254 ground Commeau maintains that the trial judge erred in not answering a jury question concerning the date that the victim knew about Commeau's penile implant.  (Sec. 2254 Mem. at 2.) Commeau declares that the jury "and or others" will have to be

3

interviewed and that there will have to be investigations, subpoena's and discovery on this issue. (Id.)  Gauging from Commeau's other pleadings it seems that he is relying on the representations of the victim in the civil suit regarding the timing of her knowledge of Commeau's penile implant; in her civil suit against the doctor who performed the implant, the victim indicated that it was not until Commeau was convicted that the victim learned of the penile prosthesis.  (Doc. No. 1-5 at 2.) The Superior Court order in question indicates:  "The Kennebec County District Attorney's Office had intentionally not informed her of this fact to bolster the credibility of certain parts of her testimony that pertained to the identification of her attacker, who was unknown to her."  (Id..)  In his 28 U.S.C. § 2254 petition Commeau contends that this was important physical evidence that was intentionally withheld from the victim.  (Sec. 2254 Mem. at 5.)

Commeau's fourth 28 U.S.C. § 2254 ground complains that the prosecutor lied or fabricated evidence.  He cites an incident in the courtroom when the prosecutor dropped a crowbar on the defense table even though the alleged victim had stated and restated that there was a black handled knife, a knife that was never found.  (Sec. 2254 Mem. at 2; see also Doc. 1-2 at 5.)  The crow bar was found in Commeau's van.  (Doc. No. 1-3 at 6 n.2.)  Commeau also cites to a letter from an attorney to whom he had made inquiries about representing Commeau in this 28 U.S.C. § 2254 proceeding that states:  "if everything you said is true then I think you have a very strong case. …If the transcripts back up what you say, a lot of evidence was overlooked and/or not presented."  (Napolitano Letter at 1, Doc. 1-4.)  He adds:  "The record speaks for it self."  (Sec. 2254 Mem. at 2.)

The fifth 28 U.S.C. § 2254 claim relates to the conduct of the officer who arrested Commeau, Sergeant Frost.  (Sec. 2254 Mem. at 3.)  Commeau wonders how this officer from

another jurisdiction so quickly learned where Commeau lived. (Id.)  Commeau maintains that Frost and other officers made biased statements and did not read Commeau his Miranda v. Arizona, 384 U.S. 436 (1966) rights at the time of the arrest.  (Id.) "At the Police Station," Commeau continues, there "was a voice check done and [the victim] stated that Petitioner's voice was not the person that did the alleged crime if the[re] was any crime at all."  (Id.)  He believes that there were many missed opportunities for the case to be dismissed.  (Id.)  In support he asserts:  "The record speaks for it self."  (Id.)

It is unclear to me what constitutional arguments Commeau sees lurking here.  But the bottom line is that Commeau did not present these claims in the state courts, he did not exhaust them as required by 28 U.S.C. § 2254(e), and he cannot now obtain § 2254 review.  See Baldwin, 541 U.S. at 29.

### *Grounds Two, Three, and Six – Sufficiency of the evidence, trial counsel's failure to call any witnesses (including Commeau) and not cross-examining the State's witnesses, and the victim's fabrications*

Commeau makes a more substantial argument in his second 28 U.S.C. § 2254 ground in asserting that there was no showing at the time of indictment or trial that there was a crime; there was, instead, "fabrication and/or conspiring between the alleged victim, Sgt. Frost, (that was old school buddies with the allege victim) and the prosecution."  (Sec. 2254 Mem. at 2.)  Commeau attaches an "INSUFFICIENCY OF THE EVIDENCE" appendix which bullets certain evidentiary points and cites other cases.  (See Doc. No. 1-2.)  He maintains:  "All Transcripts should be Ordered for review."  (Sec. 2254 Mem. at 2.)   Commeau's sixth 28 U.S.C. § 2254 bid is his argument that the victim fabricated a story to help get Commeau charged and convicted. (Sec. 2254 Mem. at 3.)  Again Commeau emphasizes that she did not know about his penile

transplant until after trial.  (Id.)  He points out that she even tried to sue the doctor who did the transplant, without success.  (Id.; Doc. No. 1-5.)   "NOTHING that [the victim] has said from the beginning to the end of the State case has been proven true or fact," Commeau insists.  "The rape kit that came back from the exam from the hospital proved all negative from the police report."  (Sec. 2254 Mem. at 3.)  In support of this ground Commeau indicates that transcripts should be ordered and reviewed by the FBI and or other federal authorities for prosecution of state officials and the victim.  (Id.)   The State folds this ground in with Commeau's sufficiency of the evidence grounds.

In his appendix pertaining to this 28 U.S.C. § 2254  ground Commeau lists a number of issues in an attempt to support his claim that there was a dearth of evidence against him.  He maintains:  there were no eyewitnesses; no identification made by the victim; no fingerprints, footprints, hair, DNA, blood, or semen that incriminated him; no knife, clothing warn by Commeau, or cigarette butts were found.  (Doc. 1-2 at 1.)  He also describes inconsistencies in the State's evidence concerning his physical description; the color of his sweatshirt; the length of the hair sticking out of the mask; how scruffy the attacker's face was; the generic description of the attacker's voice as raspy; the non-probative value of the fact that Commeau's van was in the neighborhood at the time in question; the unreliability of the canine scent investigation; the alternative explanations for Commeau's behavior that was characterized as stalking; and the unreliability of Commeau's own reports of alibis during his interrogation.  (Id.)  Commeau also argues that the semen evidence was irrelevant and unfairly prejudicial because it was too attenuated to be relevant, the residue was negligible, was not possible to 'age' accurately, was unreliable because he had had intercourse with his wife the prior day and put on the same pants that were tested, that it was unlikely he made the victim swallow his semen if there was semen

on his pants, and the prejudicial impact on the jury of evidence that he had semen in his unwashed pants.  (Id. at 5.)

Commeau did present several arguments concerning the trial courts evidentiary rulings and the sufficiency of the evidence in his direct appeal.  (See Appellant Br. at ii, 12-35; Appellant's Reply Br. at i, 2-10, State App. B.)  The Maine Law Court paid little heed: "Commeau's appeal on the merits challenges several rulings on motions to suppress and on evidentiary issues. We find no error in the court's rulings on motions to suppress or evidentiary issues and do not discuss those challenges further."  Commeau, 2004 ME 78, ¶ 14, 852 A.2d at, 74.  With respect this Court's § 2254 review, this claim was not expressly presented as a Constitutional claim; he cited only state law cases and argued that the only evidence was circumstantial.  He did recite the "beyond a reasonable doubt" standard that may or may not have alerted the courts to a constitutional claim based on a sufficiency of the evidence theory.  See Jackson v. Virginia, 443 U.S. 207 (1979; In re Winship, 397 U.S. 358 (1970); Penman v. Berry, Civ. No. 06-113-B-W, 2006 WL 3931604, 5 & n.3 (D.Me. Jan. 18, 2006), aff'd 2007 WL 313398 (d. Me. Jan. 30, 2007).

> With respect to such a challenge, as "a general rule,"
>
> federal courts should be particularly cautious about issuing habeas, on grounds of the objective unreasonableness of a state court's conclusion that the evidence is sufficient, where there has been a verdict of guilt by a jury of a defendant's peers, where the defendant's credibility was evaluated by the jury hearing his testimony, where that verdict has been affirmed on appeal in the state system, and where there is no claim of constitutional error in the conduct of the trial. Even on direct appeal, claims that the evidence was insufficient to support the verdict are "often made, but rarely successful." United States v. Moran, 984 F.2d 1299, 1300 (1st Cir.1993).

Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir. 2001); see generally id. 14 -20; see also Trejo v.
Hulick, 380 F.3d 1031, 1032 (7th Cir. 2004) ("[G]iven our deferential standard of review, which
requires us to consider not whether the state courts were incorrect but whether they were
unreasonable, we cannot allow [the § 2254 petitioner] to peel the onion in this fashion. Always to
be borne in mind is that a number of weak proofs can add up to a strong proof. [The petitioner]
misses the point in mounting separate attacks against each of the three witnesses without
considering that the whole might be greater than the sum of the parts.")(internal citations and
quotations omitted).  And, "in passing upon the sufficiency of the evidence, a federal habeas
court normally must take the state-court record as it stands."  Leftwich v. Maloney, 532 F.3d 20,
27 (1st Cir. 2008) (citing Jackson, 443 U.S. at 324; Eady v. Morgan, 515 F.3d 587, 601 (6th
Cir.2008) and United States v. Mergerson, 4 F.3d 337, 348 n. 14 (5th Cir.1993) (holding that
testimony not admitted into evidence before the jury cannot be considered for the purposes of
sufficiency review).  I conclude that Commeau has not made an adequate 28 U.S.C. § 2254
showing that he is entitled to relief on his sufficiency of the evidence challenge.

  That said, the third ground in this 28 U.S.C. § 2254 petition is very much related to
Commeau's straight-up sufficiency of the evidence discontent.  This is an ineffective assistance
claim against Commeau's trial attorney for failing to call witnesses on Commeau's behalf and for
not effectively cross-examining the State's witnesses.  (Sec. 2254 Mem. at 2.)  In support of the
Sixth Amendment claim Commeau asserts that the alleged victim's relative worked in the office
of his attorney and had access to the court files.  (Id. at 2, 5.)  Commeau refers to his post-
conviction petition attorney's "Closing Argument and Memorandum" as further support for this
claim.  (Doc. No. 1-3.)  Commeau also represents that his trial attorney described the victim as a
"'very beautiful woman.'"  (Sec. 2254 Mem. at 5.)

8

The post-conviction court addressed a claim concerning the failure to use information developed by the private investigator and to 'exploit' conflicting evidence. (Post-conviction Order at 2- 7.) Commeau's focus at this point was discrepancies as to body height, mustache, and hair length (id. at 3), the failure to call Michelle and Eric LaPointe as witnesses because they had seen Commeau earlier in the day of the abduction, (id. at 4), information concerning the number of GPC cigarettes sold to the general population and the total amount of white vans on the road, (id. at 5-6), and 'other alleged discrepancies' (id. at 6-7).

Of importance to this § 2254 claim vis-à-vis the state courts' adjudication is that the post-conviction court acknowledged that in his amended petition Commeau argued that trial counsel was ineffective because "he failed to object to certain testimony and evidence." (Sec. 2254 Mem. at 2 n.1.) The court indicated, "but at the hearing Commeau failed to identify any instances of such failures, and he does not reiterate this claim in his post-hearing memorandum." (Id.) In his post evidentiary memorandum to the post-conviction court counsel did assert that trial counsel was ineffective for not cross-examining the victim on her October 12, 2000, statement describing her attacker's testicles without noting that there was anything out of the ordinary, when in fact the pump was located in the testicle. (Doc. No. 1-3 at 6.) He also complained that counsel did not effectively cross-examine Sergeant Frost (and Officer Hall) because trial counsel basically reinforced Frost's credibility concerning his identification of Commeau as the prime suspect. (Id. at 6-7.) He also noted trial counsel's failure to ask a single question of Elizabeth Harwood, the nurse who conducted the rape kit examination. (Id. at 7.) In this memorandum counsel further maintained that counsel should have highlighted inconsistencies in the victim's description of her attacker's physical build and on the question of whether the attacker was wielding a knife or a crowbar. (Id.)

9

The Post-conviction court found and reasoned with regards to Commeau's attorney

having not called Commeau to testify as follows:

> On this issue the court has weighed the credibility of the witnesses who
> testified at the post-conviction hearing.  The court credits the testimony of [trial
> counsel] that Commeau did not want to testify because he had testified in a prior
> trial and it had not gone well.    In contrast, Commeau's testimony on this issue
> and on most other issues was not credible.  By way of example, Commeau's
> tesimon[y] that a voice exemplar was taken (when all other witnesses testified to
> the contrary), his testimony that no plea agreement was offered (in contradiction
> to State's Post-Conviction Exhibit 7). His inconsistencies as to what he had told
> the police late on the evening of the abduction, his inconsistencies as to what he
> had told the defense's private investigator, his denials on the subject of Annette
> Gammon, and his post-trial statement that he really didn't think he needed to
> testify (State's Post-Conviction Exhibit 1), all demonstrated the unreliability of his
> testimony,
> In sum, the court finds that trial counsel did not prevent Commeau from
> testifying when Commeau had wanted to testify.

(Post-conviction Order at 7.)

With regards to counsel's failure to develop information generated by the private

investigator and exploit conflicting evidence at trial, the post-conviction court ruled:

> The dispositive issue at trial was identity  -- whether Michael Commeau
> was the person who had abducted [the victim] and forced her to perform oral sex.
> At the hearing and in his post-hearing memorandum, Commeau argues that there
> was favorable evidence obtained by the defense's private investigator that trial
> counsel failed to offer and that there were discrepancies that trial counsel failed to
> highlight which would have raised questions as to whether Commeau was the
> assailant.
> (a)    Discrepancies as to Height, Mustache, and Hair Length
> At the post-conviction hearing and in his post-hearing memorandum
> Commeau focused on discrepancies between [the victim's] description of her
> assailant and Commeau.  Pease originally estimated her assailant's height at about
> the same as her husband or a little shorter (her husband is 6'2").  Trial Tr. 184-85.
> At trial she added that he might have been as short as 5'9".  Id.
> There is evidence that Michael Commeau is 5'10".  Given the
> circumstances of the case, this discrepancy is not an issue that would be likely to
> have affected the outcome of the trial – particularly given the circumstances under
> which [the victim] was assaulted.  A review of her trial testimony demonstrates
> that [the victim] and her assailant were never standing upright in a position where
> she could have reliably estimated the assailant's height.  Moreover, there is only a

two-inch discrepancy between Commeau's height and [the victim's] original
estimate of 6' to 6'2'.  This is not the kind of discrepancy that would have been
reasonably probable to affect the outcome of the trial or that counsel was
ineffective in not highlighting further.

Similarly, [the victim] described the assailant as having a scruffy face –
"maybe a couple days hair growth," Trial Tr. 144 – while Commeau at that time
had a bushy mustache and witnesses interviewed by the defense otherwise
described him as "unusually clean shaven."  However, [the victim] only saw her
attacker in the dark wearing a ski mask and only felt his face when he lifted his
mask far enough to force her to kiss him.  Given the obvious possibility that,
under the circumstances, a bushy mustache could have felt like two or three days
growth, it cannot be found that issues with respect to facial hair would have
affected the outcome of the trial if they had received greater emphasis from
defense counsel.  Indeed, asked at trial if she could tell if the assailant was clean-
shaven or had a mustache or a beard, [the victim] could not be more specific than
"I could feel hair." Trial Tr. 144.

In the same vein, the jury had a picture of Michael Commeau taken later
on the same night as the abduction.  See State's Post-Conviction Exhibit 10.
Whether that hair was "almost shoulder length," as [the victim] described the hair
of her assailant (Trial Tr. 184) or "shoulder length," as Commeau's hair was
described by Officer Moir at trial (Trial Tr. 259), may depend on one's definition
of "shoulder length," but it is undisputed that Commeau's hair was long enough in
the back to reach the base of his neck.  State's Post-Conviction Ex. 10.  To the
extent that this constituted a discrepancy, it cannot be found to have been likely to
affect the outcome of the trial.

The court particularly cannot find that trial counsel was ineffective on
these issues in light of the fact that he cross-examined [the victim] and Officer
Chandler with respect to facial hair, Trial Tr. 195-96, 317; cross-examined [the
victim] with respect to height, Trial Tr. 199-200; and brought both facial hair and
height discrepancies to the attention of the jury in closing argument.  See Closing
Argument Tr. 44, 45, 63.  Commeau's argument therefore reduces to the claim
that even though these issues were raised, they could  have been argued more
effectively.  This may or may not be true, but even if it is, trial counsel's
performance cannot be found to be sufficiently deficient to meet the standard of
ineffectiveness necessary for post-conviction relief.  Different lawyers try cases
differently, and courts must avoid assessing counsel's effectiveness based on
hindsight.  See Strickland v. Washington, 466 U.S. at 689-90.

(b)     LaPointe Testimony

Although Commeau faults trial counsel for not calling Michelle and Eric
LaPointe as witnesses, the court cannot find that this failure constituted serious
incompetence on the part of trial counsel or that the testimony of the LaPointes
would likely have affected the outcome of the trial.  Although they had seen
Commeau earlier on the day of the abduction, neither Lapointe could provide him
with an alibi for the evening hours of October 4, 2000, when the abduction and
sexual assault occurred.  Although both LaPointes told defense investigators that

11

Commeau was usually clean shaven, Michelle LaPointe had qualified that statement by indicating that sometimes Commeau had facial stubble.  Defense Post-Conviction Exhibit 2 at 10.  Moreover, as Commeau acknowledged and as the LaPointes both testified, the LaPointes' opinion of Commeau had changed once they learned of the charges and his prior convictions for sexual assault, and they would not necessarily have been favorably disposed toward him.

    (c)    <u>Information with Respect to Vans and Cigarettes</u>

Commeau  argues that trial counsel was ineffective in not offering information as to the number of GPC cigarettes sold and the total number of white vans on the road. This contention is unavailing.  The jury undoubtedly knew there were a lot of white vans and GPC cigarettes in Maine.  Evidence confirming the existence of numerous white vans would not have overcome the problem that the specific white van driven by Commeau had been identified by its license plate on the night of the crime, and that its presence the previous day had been confirmed by a witness based on the specific rust spots she observed.  (Tr. 90-94.)  Similarly, overall sales figures for GPC cigarettes would not rebut the most important evidence relating to GPC cigarettes – that when GPC cigarettes were found in his apartment, Commeau told officers that he smoked a different brand.  His wife later contradicted that testimony and confirmed that Commeau smoked GPC cigarettes.  Trial Tr. 632-33, 757.

    (d)    <u>Other Alleged Discrepancies</u>

Commeau contends that trial counsel was ineffective in not utilizing a freeze frame from Landry's Quick Stop to show that he did not have stubble or shoulder length hair on October 4, 2000.  From the court's view of that image, however, it was very difficult to tell the length of Commeau's hair or whether he had stubble.  Trial counsel was not ineffective in failing to present that image to the jury.

Commeau argues that trial counsel should have attempted to introduce a statement by Fernand Madore that he knew a lot of people at Gray's Pit Stop that fit the description of the perpetrator given by [the victim].  The court is at a loss to see how that statement would have been admissible.  Madore did not see the assailant, and his statement as to whether [the victim's] description would have fit various people had no probative value.

Finally, Commeau faults trial counsel for failing to point out the discrepancy between the knife testified to by [the victim] and the crowbar introduced by the prosecution.  The problem with this argument is that trial counsel raised precisely that discrepancy in closing argument.  Closing Argument Tr. 42-43.  Just because post-conviction counsel contends that this discrepancy could have been argued more dramatically does not establish ineffectiveness.

(Post-conviction Order at 2-7.)

Commeau's ineffective assistance challenge is governed by the § 2254 standards and the

well-established <u>Strickland v. Washington</u>,466 U.S. 668 (1984) test for ineffective assistance of

counsel claims.  <u>Sleeper v. Spencer</u>, 510 F.3d 32, 37(1st Cir. 2007). This was the standard applied by the post-conviction court.  The reasoning above applying <u>Strickland</u> to the claims of Commeau is careful and cogent.  Having reviewed the state court record with attention to the trial transcripts, there are no grounds for 28 U.S.C. § 2254 relief on this ineffective assistance of counsel claim.

### *Conclusion*

For the reasons above I recommend that the Court deny Commeau 28 U.S.C. § 2254 relief.  I further recommend that a certificate of appealability should not issue in the event Commeau files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
December 19, 2008                    U.S. Magistrate Judge

13